And finally, we will hear from Dish Network v. Ace American Insurance. Mr. Chomsky, let me just confirm that Mr. Hacker is on the line. I'm here, your honors. Can you hear me okay? Yes, we can hear you. Thank you. All right, all right. Mr. Chomsky, you can proceed. Thank you, your honor. Good morning, your honors, and may it please the court. I'm Eric Chomsky, and I represent Dish. Your honors, this appeal all comes down to burdens. To show that summary judgment was appropriate, Ace had the burden of demonstrating that there isn't even a reasonable basis for a difference of opinion about the meaning of the policy. If the terms of the contract even, and this is a direct quote, suggest more than one meaning, that's the Stanley, the contract is ambiguous and Ace hasn't met its burden. Likewise, to show that an exclusion bars coverage, Ace has the burden of showing that there is no other reasonable interpretation of the provision. But plainly, there's a reasonable basis for a difference of opinion about whether Dish is in the business of broadcasting. Because federal law specifically provides that Dish is not a broadcaster. According to the FCC, in this heavily regulated area, our regulator has fully and finally determined, after notice and comment rulemaking, that broadcasting requires programming that is, quote, available to all members of the public without any special... Is that the key in your view, that to be a broadcaster, you have to transmit to everybody, to the entire public? Well, certainly that's what the FCC has determined, and the D.C. Circuit upheld that determination. Well, does it make sense that you have to reach every single member of the public in order to be a broadcaster? I mean, the other side gives a number of examples. You want as many people as you can get, but you're not going to get everybody. And why should that mean that you're not a broadcaster? Well, let me make two points about this, Judge Chin. So in the context of federal law, there is no question, and ACE hasn't disputed this, but that that's the line that federal law draws. Unless you have this special equipment, you are not broadcasting to the public. You are not... And let me shift over to dictionary definitions in a moment. You are not making your signal publicly available. And the sorts of examples that ACE provides, sure, you may want members of the public to come in, but that doesn't mean you're public. This is a non-public transmission. So let me... Any member of the public who wants to pay the price can get this, can get this programming. Yes. Certainly, Your Honor, but that doesn't mean that it's public. There are all kinds of private property where you pay a fee to get access, but it's still private. But I do want to... You're taking the position, if I understand correctly, that at least with respect to this element, that summary judgment should go the other way. You're saying that there's simply no dispute that the simple fact of charging a fee, even if it's a tiny fee, means that you're not a broadcaster. No, Judge LaValle, we're not going that far, and we don't need to go that far. But how are you... I know you don't need to, but how are you not going that far? If you say that the definition of broadcasting is the definition that has been applied to the FCC, that if you're broadcasting to the general public for free, you're not a broadcaster. Well, that's exactly the nub of it, Judge LaValle. Our position is not that the federal definition is necessarily governing, but simply that there's a reasonable basis for dispute about this, and that forecloses summary judgment. And it also, for the reasons I was saying at the outset, means that ACE can't show that the exclusion applies here. And there is similar ambiguity about the dictionary definitions. Those likewise reflect a reasonable basis for a difference of opinion, which is, again, all that there needs to be. As the Traveler's Court put it, broadcasting can mean the dissemination of television and radio programming to the public at large, and DISH Network does not engage in this type of broadcasting. DISH doesn't send out signals, and I'm going to quote a couple of dictionary definitions here, it doesn't send out for general reception, it doesn't send them out to all receivers, it sends encrypted signals that require specialized equipment. You have to have one of DISH's satellite dishes on your roof, you have to have a proprietary box to decode the signals. And under those circumstances... If we agree, if we are persuaded that there is some ambiguity here, then what? You think there should be a trial and a jury interprets these terms, or what would happen? So the narrow answer, Judge Chinn, is you would just vacate and remand for further proceedings about, you know, including potentially further fact-finding. Now, I will say as a practical matter... This was already on summary judgment, this was on summary judgment, and the parties already there be more extrinsic evidence than is already in the record? There may well not be, Your Honor, but the fundamental point that I want to make is that the legal standards for summary judgment and for ACE trying to avoid the duty to defend and ACE trying to rely on an exclusion all really line up pretty neatly. And so while all this court needs say is that summary judgment is vacated, it may well be that the practical effect of that is that as a matter of law, ACE can't meet the burden of establishing that the exclusion applies. And remember, is this... That's because the exclusion itself doesn't apply if there is a... If there's a question, if there's still a question about whether they're engaged in the business of broadcasting, then they have to defend. They may not have to indemnify, but they have to defend. That's exactly right, Judge Walker. And I'd commend to the court the opinion in Hugo Boss, which really walks through a lot of this. It draws the distinction between, for instance, the duty to defend and the duty to indemnify, and makes very clear that an insurer in ACE's position has a really easy way out. They can come in and file a declaratory judgment action. Hugo commonplace is the language Hugo Boss uses. And if they want to resolve the uncertainty, they can do it in that very simple way. But when they choose not to do so, then they're operating at risk. And they're operating at risk that there may well be a distinction between the duty to defend and the duty to indemnify, and they'll end up having to cover the defense at the end of the day. Right. If they come in early, they can get a negotiations as to what the obligations will be. That's exactly right, Judge Walker. And that's what Hugo Boss encourages. It says, if you as the insurer think that there's any uncertainty, you have a very simple way to deal with this. And it goes on to explain there are multiple types of uncertainty that could apply. There might be factual uncertainty. There might as here be legal uncertainty. And under those circumstances, if the insurer wants to cut off their liability for providing a defense in the meantime, they can do so. And that makes a lot of sense given the nature of the duty to defend. I mean, remember that the whole idea is that you are purchasing litigation insurance. And that may not be catastrophic for a company like DISH, but this is a principle that of course applies to every policyholder. And the idea is that if there is any ambiguity at all, the insurer has to provide coverage and lessen until there's been absolute certainty that the policy doesn't apply. Thank you. You have three minutes for rebuttal. We'll hear from the other side. Good morning, your honors. John Hacker for ACE. The ACE policy's exclusion for, quote, insured in media type businesses excludes liability for all personal and advertising injury committed by an insured whose business is advertising, broadcasting, publishing, or telecasting. Basically, any insured that's in the business of widely disseminating information. That's your argument. Now what's your support for it? And what do you say about the support that the other side proffers? At least it's ambiguous. So it is clearly not ambiguous when read in context. And that's the omission you see in the other side's brief and in the argument. This court has said time and again, including in Hugo Boss, that you apply the ordinary meaning of language read in the words of Hugo Boss in the context of the whole policy. So we read a word like broadcasting in its context, both the context in which it's specifically situated and the policy. The policy here is a general, ordinary, commercial general liability policy with a broad exclusion where the word broadcasting doesn't appear in an exclusion for, for example, violating an FCC license. The exclusion is entitled insureds in media type businesses and that it defines them to be advertising, publishing, broadcasting, and telecasting. As Judge LaValle said in the very first argument, this is an example of a string of words that's used with overlapping possible so that an ordinary person looks at this and says, if you're a media type business, if you're out there disseminating information broadly, then you're going to be subject to the exclusion. That is the first key point with respect to that context. You're not arguing any of the other three elements. You're just arguing here broadcasting, right? Well, we're arguing broadcasting in the context in which it appears. You absolutely can never, no, you'll never find a judicial decision saying it's okay to take a particular term out of a, out of its context, pluck it, and then look for definitions that might support your theory. The way you look at a term like broadcasting is how is it used in the policy? In what, what is the policy trying to accomplish? What is the provision trying to accomplish? The provision is excluding live advertising injury and personal injury insurance claims against insureds in media type businesses who are engaged in quote advertising, broadcasting, publishing, and telecasting. It's as broad as set of terms as you can imagine to encapsulate all businesses who are in the business of widely disseminating information. And what's the reason for that? The reason is if you're in a business that widely disseminates information, the exposure for advertising injury and the perfectly specified personal injuries can be enormous because you're so many people receive the slanderous or infringing information. That's why the exclusion exists. And that there's no basis from that. But why get the policy then? You know, I mean, what is, how does that work? The purpose in getting the policy, but if you are in this business, then suddenly this exclusion kicks in. How does that work? Because as Dish itself says repeatedly and absolutely correctly, they are also in a business where in order to receive the signal that they broadcast to the universe, they install equipment and there's substantial liability that comes from installing the Dish equipment that's used to receive their broadcast signal. So they need, particularly coverage A, there may be coverage, some coverage B, but coverage A for this form clearly provides coverage for those kinds of risks. But it absolutely just as clearly and unambiguously excludes all liability for a business in, that is in the business of widely disseminating information. What you do if you're that kind of business is get specialized coverage to ensure that you have coverage for it. If you want it, that's completely available. It was recommended to Dish here. They chose not to obtain that insurance and that's fine, but that's how the structure of it works. If you're in that business, then if you're in the widely, business of widely disseminating information. Sounds to me like you're citing some extrinsic evidence to us, which would indicate maybe there's an ambiguity here because now we have to look at the industry practice as a whole in order to reach the conclusion you want. I don't mean to be at all. We don't think you need to look at any extrinsic evidence. I'm just saying. You have to say that because if once you say we do need to lose that extrinsic evidence, then you lose. But I noticed that the policy had the opportunity to describe the business of Dish and the business of the broadcasting. They use the word communication. I don't know what that means and where that goes. That doesn't talk about broadcasting widely. It could be communication in any way. I mean, lots of businesses are in the business of communication of something. The parties didn't choose to say when the policy was entered into what the business was of that the business was broadcasting, did they? So two points on this, your honor. First, they said communication, which unambiguously encompasses broadcasting. Of course it does. And it's a completely accurate description of Dish's business because, as I just mentioned, it's just Dish itself repeatedly emphasizes they're also in the business of communications equipment installation. So if you said broadcaster to describe Dish, you would be wrong. They're in the business of communications and which includes equipment installation. And it's also in the of broadcasting and telecasting, a word I don't want to lose sight of. The exception is not for communication. The exception is for broadcasting. Well, no, your honor. To be very clear, the exception is for media type businesses described as advertising, broadcasting, publishing. I'm talking about the one you're relying on. You're relying on the broadcasting exception. Well, we're relying on the exclusion and the word telecasting, too. I think it's you don't want to lose sight of telecasting. I'm not because telecasting shows you that the point of including a belt and suspenders term like that, again, the string of words, as Judge LaValle described earlier, to encompass all businesses widely disseminating information is to not make the mistake of thinking that you would focus narrowly on something like an FCC definition of broadcasting, but instead to include telecasting to ensure that you're encompassing everybody who does this and not narrow. Now, think about I'm not sure. I'm not sure that that I that I found your answer to Judge Chin's question a while ago satisfactory. He asked why why would they want this insurance? Aren't they just excluded from benefiting from this insurance in any way? If we accept your your view and you answered, well, part of their business is installing equipment and they can incur liability from that. But if the exclusion but as I see it, according to your argument, they are necessarily they are in the business of broadcasting. And if they are in the business of broadcasting, the the insurance doesn't apply to them. It's excluded even if the liability even if the particular liability that's asserted against them is one that related to the installation of equipment. Still, they're in the business of broadcasting. No, I'm sorry. I'm sorry, Judge. Well, that's that's my mistake. That's not accurate. This only excludes the identified personal injury and advertising injury types of offenses, bodily injury and property damage. That's coverage a that is the kind of damage that claims that would be covered that they would be exposed to in their equipment installation guys. And that is fully covered. And this exclusion absolutely would not exclude those liabilities. This is only for mass media injuries. This exclusion only applies to coverage B. It does not apply to coverage a personal injury and advertising injury and coverage be mass media type. And it even it even exempts to be clear, it even exempts certain types of personal injuries that aren't inflicted on a mass injury basis. For example, a malicious prosecution, which is a coverage of personal injury, not bodily or property damage. But this is exempt from it. Illustrating confirming the point that this is about mass media injuries, which can be inflicted absolutely by a company that broadcasts to subscribers just as much as it can be done by a terrestrial broadcaster. There is absolutely no coherent basis. And I have heard none, either in the briefer argument this morning, by which the parties would have agreed to limit this exclusion to broadcasters who broadcast by two subscribers, and not to those who don't subscribe, you know, to terrestrial broadcasters, who broadcast to everybody for free, because the injury is the same. When you have 14 million subscribers, as does dish, the injury can be just as severe as, for example, if ABC does it. That's the problem with their theory. They say it applies to NBC, not to CNBC, or ESPN. You agree, though, that apart from that, you agree that if we were to find an ambiguity, there would be two, two, two consequences. One would be deny summary judgment. The other would be that if there's an ambiguity, if there's a if there's a real problem, that you have a duty to defend, even though even though it's not clear whether the you're the insured is in the business of broadcasting. So I agree with both of those, right? If there were an ambiguity, that's why you're fighting so hard to say there is no ambiguity. Well, no, Your Honor. I mean, first of all, that's not the reason I fight. There is no ambiguity. That's our that's the 10th Circuit got it right in Arrowwood. So it's not a I'm not trying to avoid something. It's just quite clear what this means in context. But But the consequences of if the court says yes, this term is ambiguous, even when read in context of the entire policy, the consequence is to do a further examination then of the extrinsic evidence as to what the parties actually intended and understood by broadcasting. Right? That would not be that would not be our job. That would be the job of the trier of fact, right? Well, we have submitted that the evidence is one sided on that. But But the court disagrees, then I can certainly understand that your position is on the extrinsic evidence. A fact finder could only come out one way that that's your alternative position, right? That is our alternative position. That's the case. What do you do with these industry definitions in the various industry dictionaries that your adversary refers to reference in the FCC's of broadcasters and who are public and broadcasters who are not? So to point taking both of those questions, right, which I think are separate questions. First of all, the industry, the industry dictionaries uniformly support our position, all of them say different versions of transmit to accessible to the public, not one of them say that broadcaster excludes somebody who broadcasts only to those who will pay, which of course makes sense. A broadcaster CNBC is much of a broadcaster as NBC, ESPN, HBO are as much of a broadcaster in an ordinary sense, as, as ABC is the industry, the only definition dictionary definition that dish points to that suggests anything else is one Webster's telecom dictionary, which includes a definition of narrow casting referring to a broadcaster of any kind can broadcast to segments of the public. So ESPN narrow casts to people that are interested in sports, but there's still a broadcaster, each animal planet narrow casts to people that are interested in animals, but there's still a broadcaster as that definition says, the definition they cite says that direct broadcast satellite systems. Remember, that's what dish is a direct broadcast satellite provider provides the broadcast to by subscription, but it's even then it's using the term broadcast. So a narrow caster is just a broadcaster to broadcast to a specified segment. As to the FCC definition, there are several problems there. First of all, we know that the policy again, read in context, when the policy means to refer to a federal regulation or law, it does. So there's the, in the nuclear exclusion, the definition of source material says you look to federal law, the terrorism endorsement says you look to federal law, the OFAC endorsement says you look to OFAC. This exclusion says nothing of the kind the parties knew how to refer to a specific federal statute of regulatory regime when that's what they intended. Second, the word telecast is not as part of the exclusion. We're The other side says, well, telecast is just a subset of broadcast. That can't be right. That would render it completely irrelevant. What it's clearly doing is broadening again, just in the way that Judge LaValle described earlier, broadening the exclusion to encompass any business that widely disseminates information and therefore creates a risk of copyright infringement or slander with enormous liabilities. The last point I'll make is that what dish tries to do is in addition to drawing this distinction between subscriber and non-subscribers, they say, well, it's based on those who provide content. And they say terrestrial networks provide content and they don't. That distinction doesn't work at all. Again, reading the provision in context for two reasons. The first reason is that content providers include HBO, ESPN, all of them would be excluded, exempted on DISH's theory. So it doesn't make sense to draw that line at content creators because there are lots of content creators who provide their services by subscription. Second, content conveyors like DISH create an enormous risk of copyright infringement in particular, as this case shows. So there's no reason that the exclusion would be drawing a line between content creators and content conveyors. What's your response to the proposition that the proper means for you to follow in this circumstance, for an insurer to follow in this circumstance, is to bring a declaratory judgment action to settle the issue of liability? So no case under New York law, including Hugo Baugh, says that an insurer is required to do that, of course. There is only one duty to defend, and that the insurer has a duty to defend, as New York cases and this court has said repeatedly. If the allegations of the complaint are assumed to be true, you read the allegations, you assume them to be true, and if proven, they would state a claim that falls within the policy, then there's a duty to defend. That's the legal standard. That same standard would apply in a declaratory judgment action. The court wouldn't read the policy differently, it wouldn't read the complaint differently. Either way, you're just trying to determine, does the insured have, excuse me, the insurer have a duty to defend? There's only one way to answer that question, and that is by, again, assuming the allegations of the complaint to be true, and then comparing them to the policy. But doesn't that shrink the duty to defend to being identical with the duty to indemnify? Because if the answer is it turns in either case on whether there's coverage, then they're the same standard rather than being a looser standard for defend than indemnify. I mean, I thought the point of Hugo Boss was that you can eliminate doubt as to, you can eliminate the duty to defend by eliminating doubt or ambiguity with respect to the duty to indemnify, because if you get a judgment, there is, we determine as a matter of law, no duty to indemnify, then you also don't need to defend. So two points, Your Honor. It's very important, and you can look at cases like Cervino, New York cases, and other cases by this court. It does not shrink the duty to defend down to the duty to indemnify. The difference between them, and literally the only difference between the duty to defend and duty to indemnify, is an enormous difference. And that difference is that at the You just take them to be true, and as long as they could be proved, there is therefore a possibility of coverage. The duty to indemnify looks at, quote, the actual liability, what was actually proved. And so that can be much, much narrower, because who knows what can happen at a trial when the actual facts are proved up, and the actual liability is determined. That's why the cases repeatedly say the duty to defend is broader. What Hugo Boss says is, yes, an insurer can get that decision earlier in the case by filing for declaratory judgment. There's no requirement that an insurer do that. It doesn't change the analysis of the duty to defend, which again, is always just assuming the allegations of the complaint to be true. Is there a possibility of coverage? That's the question asked no matter when you file. The only thing Hugo Boss maybe suggests is a sort of supercharged uncertainty standard, that when the insurer doesn't seek a sure that there's no ambiguity, and we submit that's easily satisfied here, because there's no way to read this policy and this provision in its entirety, in its context, recognizing the objective of the exclusion as drawing a line between those media businesses that operate by subscription, like Time Magazine, versus those who do not. There's an incentive, isn't there, for you to bring a declaratory judgment action. That is that if you don't, and then the insurer has to defend themselves, you have no control over the litigation, costs could be very expensive, etc. Then if there's a duty to defend ultimately determined, you'd be out of pocket more money. Yeah, you're exactly right, Judge Walker, which is why courts have generally not an additional legal requirement that you're required to file a declaratory judgment action. Insurer has business incentives to either defend and file a declaratory judgment action, or to be careful about when it decides not to defend, because there are enormous consequences from not defending, but those consequences occur either way. Those are business decisions that are made on a regular basis. You declined a demand for insurance, presumably, right? You did it on basis of the exclusion here. That's correct. That issue was known at the outset. At that point, you could have, and I take it that at that point, the insured said, well, we're not in the business of broadcasting. The dispute was there. Is that correct? That's right. It's unambiguous that this is covered by the exclusion. That's correct, but as Hugo Boss and other cases have said, the fact that there's a disagreement between parties doesn't establish ambiguity, nor does the fact that there's a disagreement even among courts establish ambiguity. I'm not saying that's true. Okay. Just trying to understand the sequence of events that led to the litigation. That's all. All right. Thank you. Mr. Chomsky. Thank you, your honor. My friend on the other side started by jumping straight to an asserted purpose about exclusion J. I think that in and of itself is somewhat telling to jump past text to purpose, but let's look at that. The policy doesn't say widely disseminating information. It includes four specific categories, one of which is broadcasting. Their theory is, again, that these are, as he says, entities that widely disseminate information, but there is a much better understanding of what unites them. Certainly, it is a reasonable interpretation. That indeed is that these are content providers. Content providers are the ones that create the greatest likelihood of risk for the types of liabilities that are at issue here. Now, remember, we are not talking about copyright infringement writ large, and my friend on the other side is just wrong about that. Exclusion I already carves out copyright infringement. We're just talking about copyright infringement in advertisements. The entities that are most under those circumstances are those who generate content and then advertise it. And we actually know from the record here that Ace understood this to be true. Ace's own underwriter, this is Andrea Monroe at A1294, testified that the extent and content of program produced in-house will greatly affect exposure. The Stanovich report at 1034 and 1043-44 walks through exactly this distinction and says that the sort of underwriting bible, A.M. Best, explains that television broadcast stations incur just this kind of liability. They pose this kind of risk, and there's no mention of that in A.M. Best for entities like cable systems and satellite. So it is not true, as the other side has argued, that the injury is the same. The injury is not remotely the same. And remember, of course, that Dish is smaller by an order of magnitude than a traditional broadcaster in addition to the fact that it's not generating its own content that might give rise to liability for something like libel or slander in addition to copyright infringement in an advertisement. Let me turn very briefly to this question about telecasting, which is somewhat of a red herring. Both the District Court and the Tenth Circuit understood that the common meaning of that term is to broadcast by television. And the reason for its inclusion is a historical one, that originally broadcasting referred to radio, so television just means broadcasting by television. And so it doesn't need to be evidence. And I think it's noteworthy that the other side has kind of run away from that. In the red brief, they argued at length about extrinsic evidence and made all kinds of claims about how it could only come out one way and only could support them. And in fact, there are reams of extrinsic evidence that support our view here, not just Dish's own statement in its annual report that it doesn't provide broadcast services. But Judge Walker, as Your Honor noted, these provisions about class codes and sick codes in the business of the insured. So if I could just squeeze out one last sentence. The question here, the fundamental question, is whether there is any ambiguity at all. And you see that not only from federal law, although the fact that the FCC definitively reached that conclusion is certainly highly probative, but from lay dictionaries, which exclude an entity like Dish, for instance, talking about a signal being made public, and even contrary to what my friend said from technical dictionaries. Webster's New World Telecom Dictionary refers to broadcast television as television programming sent over the air to all receivers. And that is absolutely not what Dish does. Dish sends a signal to its receivers, and that's why Newton's Telecom Dictionary likewise specifically excludes satellite from one of its definitions. Thank you both. We'll reserve a decision. That is the last case on the calendars on submission. Accordingly, I'll ask the deputy to adjourn.